UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Carmine Centrella and
Mary Brennan-Centrella,

       Plaintiffs,

       v.                             Civil Action No. 2:14-cv-111-jmc

Ritz-Craft Corporation of Pennsylvania, Inc.,
and Mountain View Modular Homes, Inc.,

       Defendants.

**OPINION AND ORDER**
(Docs. 140, 147, 169)

      This case arose from alleged misrepresentations and broken promises regarding a modular home purchased by Plaintiffs Carmine Centrella and Mary Brennan-Centrella in 2013. Defendant Ritz-Craft Corporation of Pennsylvania, Inc., manufactured the home; and Defendant Mountain View Modular Homes, Inc., completed and installed it, and sold it to Plaintiffs. After a five-day trial, a jury found in favor of Plaintiffs on their consumer protection claim but in favor of Ritz-Craft on Plaintiffs' breach of warranty claims.

      Pending before the Court is Ritz-Craft's Supplemental Motion for Post-Trial Relief, wherein Ritz-Craft seeks judgment as a matter of law or, in the alternative, a new trial, pursuant to Rules 50(b) and 59(a) of the Federal Rules of Civil Procedure.

(Doc. 169.)[1]  Plaintiffs have filed an Opposition (Doc. 162),[2] and Ritz-Craft has replied (Doc. 163).  For the reasons stated below, Ritz-Craft's Supplemental Motion for Post-Trial Relief (Doc. 169) is DENIED.

## Factual and Procedural Background

At the time of their purchase of the modular home that is the subject of this case, Plaintiffs were residents of Connecticut and owned property in Isle La Motte, Vermont.  They long planned to build a home on their Vermont property where they could retire and live with their family.  With this in mind, Mary Brennan-Centrella researched home building and modular homes for years, focusing on energy-efficient homes.  She eventually decided to contract with Mountain View for the purchase of a modular home.

Around August 2012, Mountain View recommended Ritz-Craft to Plaintiffs.  Mary knew Mountain View and Ritz-Craft were separate entities but assumed they had a working relationship and collaborated with each other in the installation of Ritz-

---

[1]  Ritz-Craft has filed two briefs titled "Supplemental Motion for Post-Trial Relief," one on October 14, 2017 (Doc. 147) and another on December 21, 2017 (Doc. 169).  The Court cites to only the more recently filed brief herein but assumes the two briefs are identical except for the revisions made to the more recent version pursuant to the Court's December 19, 2017 Text Order requiring Ritz-Craft to file "a revised post-trial motion that mirrors [the earlier post-trial motion] but cites to the official trial transcript instead of to 'Notes of Testimony'" (Doc. 164).  Also noteworthy, on September 5, 2017, Ritz-Craft filed an earlier version of its post-trial motion, titled "Motion for Post-Trial Relief."  (Doc. 140.) The Court does not consider or reference that motion, given that it includes no citation to the record evidence and was later revised to include such citation.

[2]  Citations appear in footnotes in Plaintiffs' Opposition (*see, e.g.*, Doc. 162 at 2), inconsistent with the practice of this Court and in violation of Bluebook Rule B1.1, which states: "In non-academic legal documents, such as briefs and opinions, citations generally appear *within the text of the document* immediately following the propositions they support."  *The Bluebook: A Uniform System of Citation* B1.1, at 3 (Columbia Law Review Ass'n et al., eds., 20th ed. 2015) (emphasis added).  In future filings, Plaintiffs are advised to follow this Rule and include citations within the text of their briefs.

Craft's homes. Mountain View's website affirmed this assumption, stating that it was allied with Ritz-Craft, describing Ritz-Craft's one- and ten-year warranties, and providing a link to a video of the president of Ritz-Craft making statements and warranties to consumers, including a warranty that Ritz-Craft homes provide maximum energy efficiency. The website also indicated that Ritz-Craft's modular homes were built to comply with all applicable local and state codes. Ritz-Craft's own website similarly described its warranties and contained other information that Plaintiffs reviewed before purchasing the home, including a statement that all Ritz-Craft homes are "inherently green" and energy efficient.

Around November 2012, Plaintiffs visited the Ritz-Craft factory in Pennsylvania. A Mountain View representative met Plaintiffs at the front door of the factory. Upon entering the building, Plaintiffs observed a display in the lobby personally welcoming them. The couple toured the facility and was guided through the manufacturing process, step-by-step, for approximately four hours. During the tour, Plaintiffs met various Ritz-Craft employees and discussed the modular homes' energy efficiency. A Ritz-Craft employee emphasized the homes' energy efficiency and told Plaintiffs that a Ritz-Craft home—whether a base model or the top model—would meet Vermont's energy code. In deciding whether to purchase a Ritz-Craft modular home, Plaintiffs considered the representations made to them during this tour, as well as the representations made in Ritz-Craft's advertisements and corporate videos.

On January 18, 2013, Plaintiffs entered into a Sales Agreement with Mountain View for the purchase and installation of a Ritz-Craft modular home. The parties

agreed on a purchase price of $226,875, which was later increased to approximately $246,000. In addition, Plaintiffs paid Ritz-Craft $94,262.47 for the home.

After the Sales Agreement was signed, the modules for the home were delivered to the home site in Vermont, and in April 2013, they were set on a foundation. Thereafter, various problems arose. First, Mountain View discovered a missing tub shower enclosure, requiring Mountain View to purchase a tub and provide tile work. Later, an energy-efficiency report warned against Plaintiffs using the shower due to health and safety concerns.

On July 18, 2013, Plaintiffs began occupying the house, and more problems arose. For example, when Plaintiffs turned on the heat downstairs, it turned on upstairs instead. Additionally, water poured onto the upstairs hardwood floor and leaked through to the first floor ceiling. Plaintiffs contacted a plumbing company to evaluate the situation, and the company found code violations in the plumbing and heating systems, along with elevated carbon monoxide levels. Plaintiffs hired another plumbing company to inspect the plumbing and heating systems in the house, and that company also found code violations. In January 2014, a mechanical company discovered frozen pipes in the upper story of the house. And later, a home inspector hired by Mountain View found problems in the insulation work within the home's walls. Plaintiffs notified Mountain View and Ritz-Craft about the home's defects and required repairs, including but not limited to inadequate installation of walls, defective plumbing design, energy code violations, and heating system problems resulting in excessive heating costs and inadequate heating.

On June 2, 2014, Plaintiffs filed their Complaint against Ritz-Craft and Mountain View, alleging violations of the Vermont Consumer Protection Act (VCPA) and breaches of express and implied warranties in relation to Plaintiffs' purchase of the modular home.  (Doc. 1.)  About a year later, after a failed mediation attempt (Doc. 51), default was entered against Mountain View pursuant to Federal Rule of Civil Procedure 55(a) (Doc. 55), leaving Ritz-Craft as the only active defendant in the case.  Thereafter, Ritz-Craft filed a Motion for Summary Judgment (Doc. 63), which the Court denied in an Opinion and Order dated August 23, 2016 (Doc. 73).  While the Motion for Summary Judgment was pending, Plaintiffs filed a Motion for Leave to Amend the Complaint, which the Court granted.  (Doc. 76.)  On October 13, 2016, the Amended Complaint was filed: it added no new claims, but rather, alleged additional facts in support of the claims contained in the original Complaint.  (Doc. 77.)

Thereafter, the parties attended a second failed mediation, conducted additional discovery, and filed several motions in limine in preparation for trial.  After a five-day trial in August 2017, the jury found in favor of Plaintiffs on their consumer protection claim, awarding them their consideration paid to Ritz-Craft for the home in the stipulated amount of $94,262.  (Doc. 134 at 1–2.)  The jury found in favor of Ritz-Craft, however, on Plaintiffs' breach of warranty claims, finding that Plaintiffs failed to prove that Ritz-Craft made any warranties about the home to Plaintiffs or that Plaintiffs were in privity of contract with Ritz-Craft.  (*Id.* at 2–3.)

Both parties filed post-trial motions.  Plaintiffs filed an Application for Costs and Attorney Fees (Doc. 141) and a Motion for Prejudgment Interest (Doc. 139), which

are currently pending and will be addressed in a separate Opinion and Order. And

Ritz-Craft filed the pending Supplemental Motion for Post-Trial Relief (Doc. 169),

which is under consideration herein. Ritz-Craft's Post-Trial Motion contains both a

Rule 50(b) motion for judgment as a matter of law (*id.* at 5–20*)* and, in the alternative,

a Rule 59(a) motion for a new trial (*id.* at 20–21), as discussed below.

## **Motion for Judgment as a Matter of Law**

Relying on Rule 50(b) of the Federal Rules of Civil Procedure, Ritz-Craft makes

the following arguments in support of its motion for judgment as a matter of law:

(1) the Court should have granted Ritz-Craft's Motion for Summary Judgment with

respect to Plaintiffs' VCPA claim (Doc. 169 at 5–6); (2) the Court should have denied

Plaintiffs' Motion for Leave to Amend Complaint (*id.* at 7); (3) the Court should have

granted Ritz-Craft's Rule 50(a) motion for judgment as a matter of law, made orally

after the close of Plaintiffs' evidence at trial, and the Court may now grant the motion

post-trial under Rule 50(b) (*id.* at 7–13); (4) the jury charge regarding the VCPA claim

contained information that was prejudicial to Ritz-Craft (*id.* at 14); (5) the verdict form

improperly failed to require the jury to make an express finding of the particular

misrepresentation or omission giving rise to a determination that Ritz-Craft violated

the VCPA (*id.* at 14–17); (6) the Court should not have permitted Plaintiffs' expert

James Bradley to testify regarding opinions that were not disclosed in his expert

report (*id.* at 17–19); and (7) the Court's instruction to the jury regarding Mountain

View's involvement in this lawsuit was insufficient (*id.* at 19–20).

## I.  Legal Standard

Federal Rule of Civil Procedure 50(b) provides that:

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion.  No later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.

To succeed on a Rule 50 motion for judgment as a matter of law, the moving party must show that, "after full hearing on an issue at trial, 'there is no legally sufficient evidentiary basis for a reasonable jury' to resolve the issue in favor of the non-moving party." *Cross v. New York City Transit Auth.*, 417 F.3d 241, 247 (2d Cir. 2005) (quoting Fed. R. Civ. P. 50(a)(1)); *see Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998) ("Judgment as a matter of law may not properly be granted under Rule 50 unless the evidence, viewed in the light most favorable to the opposing party, is insufficient to permit a reasonable juror to find in her favor.").  In reviewing a Rule 50 motion, the court "may consider all the record evidence, but in doing so it 'must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.'" *Cross*, 417 F.3d at 247 (quoting *Reeves. v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)); *see S.E.C. v. Ginder*, 752 F.3d 569, 574 (2d Cir. 2014) ("The court must consider the evidence in the light most favorable to the non-movant and give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence." (internal quotation marks omitted).)  Thus, weak evidence does not itself

justify judgment as a matter of law; and the judge's role is not to resolve problems with testimony, but rather, to determine whether a reasonable jury could make the inference the jury made.

A movant's burden in achieving Rule 50 relief is "particularly heavy" where, as here, a jury has deliberated and returned its verdict. *Cross*, 417 F.3d at 248. The motion must be denied unless "the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached." *Id.* (quoting *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 14 (2d Cir. 1993)). In other words, the court may grant a post-verdict Rule 50 motion only if there is "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture" or there is "such an overwhelming amount of evidence in favor of the movant that reasonable and fair[-]minded [persons] could not arrive at a verdict against him." *Id.* (quoting *Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1046 (2d Cir. 1992)); *see also Drake v. Allergan, Inc.*, 111 F. Supp. 3d 562, 566 (D. Vt. 2015).

## II.    Analysis

### A.    Court's Prior Decisions on Ritz-Craft's Motion for Summary Judgment (VCPA Claim) and Plaintiffs' Motion for Leave to Amend Complaint

Ritz-Craft first contends that the Court should have granted its Motion for Summary Judgment with respect to Plaintiffs' VCPA claim because all of Ritz-Craft's alleged misrepresentations or omissions were "expressly known to Plaintiffs prior to

their contact[] with Mountain View[] to purchase the home" (Doc. 169 at 5), and for other reasons not articulated in the pending Motion (*id.* at 6).  The only support Ritz-Craft provides for this argument is as follows: "For the reasons set forth in its summary judgment pleadings, Ritz-Craft respectfully submits [that] the Court's determination regarding summary judgment was in error and provides a basis for post-trial relief in this case." (*Id.*)  Plaintiffs' response to this argument (as well as to Ritz-Craft's following two arguments) is that it does not merit a response because it is "improper under governing case law as a basis for post-trial relief." (Doc. 162 at 3.)  Indeed, Ritz-Craft's argument appears to be an attempt to relitigate a settled issue in the case, with no offer of new evidence or law to support it. (*See, e.g.*, Doc. 63 at 4, Doc. 73 at 10–15.)

But "post-trial motions do not exist to allow [losing parties] to relitigate the case, present new theories, or otherwise take a 'second bite at the apple.'" *Hines v. Veterans Outreach Ctr., Inc.*, No. 10-CV-6493, 2016 WL 1271076, at *1 (W.D.N.Y. Mar. 28, 2016) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).  Ritz-Craft provides no colorable argument to vacate the judgment here, but rather, merely references arguments advanced nearly two years ago in its Motion for Summary Judgment (*see* Doc. 63).  Those issues have been fully considered and rejected (*see* Doc. 73), and there is no reason for the Court to repeat the analysis here, especially where neither the moving nor responding party has analyzed them in their briefs, and where Ritz-Craft has offered no evidence that was admitted at trial to dispute the Court's decision.

Specifically, on August 23, 2016, the Court issued an Opinion and Order clearly addressing the principal issue argued here and finding as follows:

> [T]h[e] evidence suggests that the Centrellas did not have "express knowledge" of the respective responsibilities of and extent of the work (including insulation) to be performed by Mountain View and other subcontractors. In particular, contrary to Ritz-Craft's assertion that the Centrellas knew entities other than Ritz-Craft were responsible for the insulation work (*see* Doc. 63 at 5), the Sales Agreement and deposition testimony suggests Ritz-Craft may have "suppl[ied]/install[ed]" insulation and provided the plans for its installation. Accordingly, the responsibilities of other entities were not in fact "fully known" to the Centrellas. (*See id.* at 6 (arguing no VCPA claim "[b]ecause all of these facts were fully known to Plaintiffs").)

(Doc. 73 at 14.) *Centrella v. Ritz-Craft Corp. of Pennsylvania, Inc.*, Civil Action No. 2:14-cv-111-JMC, 2016 WL 4444759, at *6 (D. Vt. Aug. 23, 2016). The Court also found that there were triable issues of fact regarding Plaintiffs' awareness that the energy efficiency of the home was necessarily dependent on work performed by parties other than Ritz-Craft; and triable issues of fact regarding whether Ritz-Craft made statements of fact to Plaintiffs regarding the home's energy efficiency. *Id.* The Court explained: "Even assuming the phrases 'inherently green' and 'energy efficiency' . . . constitute statements of opinion, they were not the only statements made to the Centrellas[:] . . . [a] Ritz-Craft employee . . . told the Centrellas that their modular home would satisfy Vermont energy code." *Id.*

Ritz-Craft points to no evidence admitted at trial to undermine the Court's decision. And in fact, there was ample evidence at trial to support the jury's verdict on the VCPA claim, particularly regarding misrepresentations or omissions made by Ritz-Craft to Plaintiffs. (*See, e.g.*, Doc. 167 at 88:20–24, 91:1–13, 92: 3–12 (Mary Centrella trial testimony); Doc. 168 at 42:12–19, 46:6–7, 73:17–20 (Carmen Centrella trial

testimony).)  Ritz-Craft has clearly failed to meet the high bar of showing "a complete

absence of evidence supporting the verdict" on this issue, or, stated differently, that

the jury's findings "could only have been the result of sheer surmise and conjecture" or

that "reasonable and fair minded [persons] could not arrive at a verdict against [Ritz-

Craft]" on this issue.  *Advance Pharm., Inc. v. United States*, 391 F.3d 377, 390 (2d Cir.

2004) (first alteration in original) (quoting *Galdieri*, 136 F.3d at 289).

Similar to the argument regarding the Court's ruling on Ritz-Craft's Motion for

Summary Judgment, Ritz-Craft argues that the Court erred in granting Plaintiffs'

Motion for Leave to Amend Complaint.  (Doc. 169 at 7; *see* Docs. 71, 76.)  Ritz-Craft

states:

> For the reasons set forth in its opposition [to Plaintiffs' Motion for Leave
> to Amend Complaint] and because the amendment permitted Plaintiffs to
> include additional bases for alleged violation of the CPA . . . , Ritz-Craft
> respectfully submits that amendment was improper and provides a basis
> for post-trial relief in this case.

(Doc. 169 at 7.)  As explained above, the purpose of post-trial motions is not to

relitigate the case or rehash arguments, like this one (*see* Docs. 71, 76), that have

already been made and decided, especially when the moving party points to no

evidence presented at trial that would require a different decision.  Ritz-Craft offers no

reason to disturb the Court's decision, which simply allowed Plaintiffs to amend their

Complaint to "allege additional facts in support of the[ir] existing legal claims."

(Doc. 76 at 2.)

Furthermore, Ritz-Craft did not make a Rule 50(a) motion regarding the

arguments made in its Opposition to Plaintiffs' Motion for Leave to Amend the

Complaint; nor did Ritz-Craft make such a motion regarding the arguments made in

its Motion for Summary Judgement.  A Rule 50(a) motion requesting judgment as a matter of law on one ground but omitting another is insufficient to preserve a judgment-as-a-matter-of-law argument based on the latter.  *Lore v. City of Syracuse*, 670 F.3d 127, 152–53 (2d Cir. 2012) (citing *Holmes v. United States*, 85 F.3d 956, 961–63 (2d Cir. 1996); *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 164 (2d Cir. 1998)).  "Together, Rules 50(a) and (b) limit the grounds for judgment [as a matter of law] *to those specifically raised in the prior motion for a directed verdict.*"  *Holmes*, 85 F.3d at 962 (emphasis added) (internal quotation marks omitted); *see* Fed. R. Civ. P. 50(b), *Notes of Advisory Committee to 2006 Amendment* ("Because the Rule 50(b) motion is only a renewal of the preverdict motion, it can be granted only on grounds advanced in the preverdict motion."); *Munn v. Hotchkiss Sch.*, 24 F. Supp. 3d 155, 182 (D. Conn. 2014) ("A party may only assert a renewed claim for judgment as a matter of law under Rule 50(b) if it previously raised that specific issue during trial in a Rule 50(a) motion."); *Lexjac, LLC v. Bd. of Trustees of the Inc. Vill. of Muttontown*, No. CV 07-4614 (ARL), 2014 WL 12653834, at *4 (E.D.N.Y. July 30, 2014) ("It is well settled that a party may not move for judgment as a matter of law for the first time after a verdict has been entered, but rather may only renew a motion that has been made prior the submission of the case to a jury.").

The Second Circuit has held that the specificity requirement of Rule 50 is "obligatory," its purpose being to "ensure[ ] that the other party is made aware of any deficiencies in proof that may have been overlooked."  *Holmes*, 85 F.3d at 962 (alteration in original) (internal quotation marks omitted).  Requiring a party to state specific grounds for its Rule 50(a) motion puts the opposing party on notice of potential

deficiencies in its proof before the case is submitted to the jury. *Id.* Here, Ritz-Craft

made an oral Rule 50(a) motion at the close of Plaintiffs' case during the third day of

trial. With respect to the VCPA claim (the only claim relevant here), the motion

identified four grounds on which Ritz-Craft claimed it was entitled to judgment as a

matter of law: (1) the jury could not find that Ritz-Craft made one of the particular

alleged misrepresentations or omissions listed in Plaintiffs' Amended Complaint;

(2) Plaintiffs' interpretation of Ritz-Craft's alleged misrepresentations or omissions

was not reasonable and was not material because of their knowledge of the respective

roles of Ritz-Craft and Mountain View; (3) Ritz-Craft's alleged misrepresentations that

the home was "inherently green" and "energy efficient" were statements of opinion, not

fact, and thus could not give rise to a VCPA claim; and (4) Plaintiffs failed to present

any evidence to support their exemplary damages claim. Ritz-Craft made no mention

of any additional arguments that were previously made in its Opposition to Plaintiffs'

Motion for Leave to Amend Complaint or in its Motion for Summary Judgment.

Therefore, these arguments have not been preserved, and the Court need not rule on

them here. *See Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers*, 34 F.3d

1148, 1155 (2d Cir. 1994) ("[I]f an issue is not raised in a previous motion for a

directed verdict, a Rule 50(b) motion should not be granted unless it is required to

prevent manifest injustice." (internal quotation marks omitted)).

## B. Ritz-Craft's Rule 50 Motion Made at Trial (VCPA Claim)

Next, Ritz-Craft argues that its oral Rule 50 motion for judgment as a matter of

law, made after the close of Plaintiffs' evidence at trial, should have been granted and

may now be granted. (Doc. 169 at 7–13.) At trial, the Court denied the motion on the

VCPA claim, stating that a reasonable jury could conclude that all the elements of the claim had been satisfied. Although the Court agreed with Ritz-Craft that the statement that Ritz-Craft's homes are "inherently green" was a statement of opinion, not fact, and thus that statement could not constitute a "misrepresentation" under the VCPA, *see PH W. Dover Prop., LLC v. Lalancette Eng'rs*, 2015 VT 48, ¶ 6, 199 Vt. 1, 120 A.3d 1135 (quoting *Heath v. Palmer*, 2006 VT 125, ¶ 14, 181 Vt. 545, 915 A.2d 1290) ("We have distinguished statements of fact from statements of opinion in the consumer-fraud context, holding that misrepresentations of the former may constitute fraud while misrepresentations of the latter cannot."); the Court found that the statement that the home was "energy efficient" was a statement of fact. Only one misrepresentation is required to demonstrate a violation of the VCPA, and representations that could have more than one reasonable interpretation may violate the VCPA if just one of those interpretations is false. *See Carter v. Gugliuzzi*, 168 Vt. 48, 57, 716 A.2d 17, 24 (1998); 9 V.S.A. § 2453(a). Evidence was admitted at trial that Ritz-Craft represented to Plaintiffs that the home was energy efficient. (*See, e.g.*, Doc. 167 at 91:1–13, 92: 3–12 (Mary Centrella trial testimony); Doc. 168 at 42:12–19, 46:6–7, 73:17–20 (Carmen Centrella trial testimony).) Therefore, Ritz-Craft's assertion that the only alleged misrepresentations made by Ritz-Craft to Plaintiffs about the modular home were statements of opinion is inaccurate. Given the evidence admitted at trial, a reasonable person could conclude—as the jury did—that Ritz-Craft violated the VCPA based on misrepresentations of fact made to Plaintiffs about the home.

## C.    Jury Charge on VCPA Claim

Next, Ritz-Craft argues that the jury charge regarding the VCPA claim contained information that was prejudicial to Ritz-Craft.  (Doc. 169 at 14.) Specifically, Ritz-Craft contends the following excerpt from the instruction was prejudicial:

> Plaintiffs claim that Ritz-Craft committed unfair or deceptive acts in violation of the CPA by: (a) making misrepresentations to Plaintiffs regarding the modular home's energy efficiency and compliance with Vermont's energy code, and misrepresenting that the home would be fully backed by Ritz-Craft and completed with quality workmanship; (b) failing to disclose to Plaintiffs that the energy efficiency of the modular home would be dependent on the work performed by Mountain View; and (c) failing to disclose to Plaintiffs information concerning Ritz-Craft's relationship with "approved" builders like Mountain View and the process by which a builder like Mountain View became "approved" by Ritz-Craft.

(Doc. 131 at 12–13.)  Ritz-Craft objects that this part of the instruction was "unnecessary" and "could serve to amplify Plaintiffs' claim before the jury."  (Doc. 169 at 14.)

"As a general matter, no particular wording is required for a jury instruction to be legally sufficient, but rather, th[e] Court must look to the charge as a whole to determine whether it adequately reflected the law and would have conveyed to a reasonable juror the relevant law." *United States v. Gabinskaya*, 829 F.3d 127, 132–33 (2d Cir. 2016) (internal quotation marks omitted).  Ritz-Craft does not argue that the Court's VCPA instruction inadequately reflected the law to jurors.  The only law cited by Ritz-Craft to support its argument is a case involving a jury instruction that contained an "erroneous statement of the law" and was "likely to leave the jury highly confused." *DeLima v. Trinidad Corp.*, 302 F.2d 585, 587 (2d Cir. 1962).  Here, nothing

in the above excerpt erroneously described the relevant law or was likely to confuse the jury. Rather, the excerpt merely summarizes Plaintiffs' claims, based on the evidence presented at trial, prior to outlining the elements of a VCPA claim for the jury. *See Poulin v. Ford Motor Co.*, 147 Vt. 120, 127 (1986) (approving jury instructions that "outlin[ed] the plaintiff's claims"). The Court finds no error.

### D.    VCPA Claim on Verdict Form

Ritz-Craft next argues that the verdict form should have included the seventeen specific alleged misrepresentations or omissions by Ritz-Craft that were listed in Plaintiffs' Amended Complaint (*see* Doc. 77 at 9–11), and the Court should have required the jury to "determine that *each specific representation was made*, that it was reasonably interpreted[,] and that the specific representation was material." (Doc. 169 at 15 (emphasis added).) Ritz-Craft presents no law to support this argument, and the Court is aware of none. The law simply requires that a plaintiff prove the following elements, by a preponderance of the evidence, to succeed on a claim for violation of Vermont's CPA: (1) the defendant made a statement, omitted information, or engaged in a practice, that an ordinary person would decide was misleading; (2) the plaintiff reasonably interpreted what the defendant said, failed to say, or did; and (3) the defendant's statement, omission, or practice was "material," meaning it would be likely to affect an ordinary person's decision whether to purchase the relevant goods or services or enter into the relevant contract. *McKinstry v. Fecteau Residential Homes, Inc.*, 2015 VT 125, ¶ 10, 200 Vt. 392, 131 A.3d 1123 (citing *Jordan v. Nissan N. Am., Inc.*, 2004 VT 27, ¶ 5, 176 Vt. 465, 853 A.2d 40); *see* 9 V.S.A. § 2453. The verdict form tracked this law, requiring the jury to answer the following questions:

1. Did Plaintiffs prove by a preponderance of the evidence that Ritz-Craft made a statement, omitted information, or engaged in a practice, that was likely to mislead Plaintiffs with respect to their purchase of a Ritz-Craft modular home? . . .

2. Did Plaintiffs prove by a preponderance of the evidence that they interpreted Ritz-Craft's statement, omission, or practice reasonably under the circumstances? . . .

3. Did Plaintiffs prove by a preponderance of the evidence that Ritz-Craft's misleading statement, omission, or practice was material, meaning it affected Plaintiffs' decision to purchase the modular home?

(Doc. 134 at 1.)

Ritz-Craft cites to *Gregory v. Poulin Auto Sales, Inc.*, 2010 VT 85, 188 Vt. 619, 9 A.3d 679, in support of its argument, noting that in that case, the Vermont Supreme Court remanded for a "'clear finding of a violation'" of the CPA, as necessary to establish liability under Vermont law. (Doc. 169 at 15–16 (quoting *Gregory*, 2010 VT 85, ¶ 16)). Applying *Gregory* here, Ritz-Craft contends that, "absent the express allegations [regarding which particular misrepresentations Ritz-Craft made to Plaintiffs], it is impossible to determine whether . . . there was a 'clear finding of a violation' of the CPA." (*Id.* at 16 (quoting *Gregory*, 2010 VT at ¶ 16).) *Gregory* does not, however, stand for that proposition: nowhere in the case does the court indicate that the jury in a CPA case must specify on the verdict form which particular misrepresentations the defendant made to the plaintiff. Moreover, the procedural posture of that case was entirely different from this one. There, without holding a hearing and with "precious little evidence in the record," the trial court granted the plaintiff's motion for summary judgment on a CPA claim, finding that the defendant had made false representations in violation of the CPA. *Gregory*, 2010 VT at ¶ 16.

17

Here, not only was there a hearing, there was a five-day trial; and the jury verdict clearly indicates the jury's findings on the CPA claim.

In a footnote, Ritz-Craft argues that the verdict form was also deficient because it "precludes any opportunity to determine whether or not the jury's verdict is inconsistent." (Doc. 169 at 17 n.1.) Ritz-Craft explains that, although it is "unable definitively to make [a] determination [as to whether the verdict is inconsistent], Ritz-Craft believes it "may be inconsistent." (*Id.*) This argument fails for two reasons. First, Ritz-Craft did not raise this objection earlier and thus it has been waived, given the well-established rule that "a party waives its objection to any inconsistency in a jury verdict if it fails to object to the verdict prior to the excusing of the jury." *Kosmynka v. Polaris Indus., Inc.*, 462 F.3d 74, 83 (2d Cir. 2006). Second, even if the objection had not been waived, it lacks merit because the findings contained in the jury's verdict can be reconciled with each other; and the law provides that, where there is a view of the case that makes a jury's verdict internally consistent, the verdict must be resolved that way. *See Turley v. Police Dep't of City of New York*, 167 F.3d 757, 760 (2d Cir. 1999) ("Before a court may set aside a special verdict as inconsistent and remand the case for a new trial, it must make every attempt to reconcile the jury's findings, by exegesis if necessary." (internal quotation marks omitted)). As Ritz-Craft itself states: "[I]f the jury's determination of a misrepresentation or omission giving rise to the CPA claim was [Ritz-Craft's] failure to disclose that [the home's] energy efficiency would be dependent upon work performed by the builder, the verdict[] [is] not necessarily inconsistent." (Doc. 169 at 17 n.1.)

### E. Testimony of Expert Witness James Bradley

Ritz-Craft next finds error with the Court's decision to allow Plaintiffs' expert, James Bradley of Caleb Contracting LLC, to testify at trial regarding opinions that were not disclosed in Bradley's expert report. (Doc. 169 at 17–19.) By way of background, Plaintiffs had produced to Ritz-Craft Bradley's expert report before the trial and later introduced the report as an exhibit at the trial. Bradley then testified about an opinion at trial that was not included in his report: specifically, that the home as designed by Ritz-Craft failed to comply with Vermont's energy code because the design placed a heating unit in the basement, which was not an unconditioned space. (*See* Doc. 167 at 114–19, 144–47, 149, 165–66 (Bradley trial testimony); Doc. 169 at 18.) Despite the parties agreeing in their Joint Trial Memorandum that Bradley would "provide testimony on the energy efficiency of the home, Vermont Energy Code compliance, and defective workmanship" (Doc. 92 at 27), this particular opinion regarding Ritz-Craft's alleged faulty design of the home in such a way as to violate Vermont's energy code was not included in Bradley's report. In fact, Plaintiffs failed to disclose this expert testimony at any time prior to Bradley testifying about it at trial. (Doc. 169 at 18.) Ritz-Craft moved for the Court to strike the testimony and issue a limiting instruction to the jury, but the Court denied the motion, finding that: (1) Ritz-Craft could address the issue on cross-examination of Bradley, and (2) Ritz-Craft's expert architect, Albert Russell, could testify beyond the scope of his previously produced expert report in order to respond to Bradley's testimony regarding Ritz-Craft's design of the plans for the home.

Rule 26(a)(2)(B)(i) of the Federal Rules of Civil Procedure requires that expert testimony be accompanied by a written report, which shall contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Rule 37(c)(1) of the Federal Rules of Civil Procedure states that, "[i]f a party fails to provide information . . . as required by Rule 26(a) . . . , the party is not allowed to use that information . . . at a trial, unless the failure was substantially justified or is harmless." Although Rule 37 is written in mandatory terms and is designed to provide strong inducement for disclosure of information, the rule expressly provides that the information should not be excluded if the failure to disclose was harmless or if a substantial justification exists for such a failure. *Design Strategies, Inc. v. Davis*, 367 F. Supp. 2d 630, 634 n.3 (S.D.N.Y. 2005). Therefore, "[c]ourts in this Circuit have noted that, [d]espite the self-executing nature of Rule 37(c)(1), the imposition of sanctions under the rule is a matter within the trial court's discretion." *Id.* (internal quotation marks omitted) (second alteration in original); *Hein v. Cuprum, S.A., De C.V.*, 53 F. App'x 134, 136 (2d Cir. 2002) ("[T]he imposition of sanctions for abuse of discovery under [Rule] 37 is a matter within the discretion of the trial court.").

Applying these principles, the Second Circuit held in *Hein v. Cuprum*, 53 F. App'x at 136, that the district court did not abuse its discretion by allowing an expert witness to testify about an issue that was not disclosed in his expert report, where the court took appropriate steps—including allowing the plaintiff to examine the expert on re-direct examination and to recall another expert to rebut the testimony—to ensure that the plaintiff would not be harmed by the nondisclosure. Noting that "[t]he

trial judge appropriately used his discretion to steer a middle course between the extreme remedy of exclusion and the possibility of unfair prejudice to the plaintiff," *id.* at 137, the court held that "it was not an abuse of discretion for the trial judge to have allowed the challenged testimony where he took appropriate steps to ensure that plaintiff would not be harmed by the defendants' nondisclosure," *id.* at 136.

Similarly, here, the Court allowed Ritz-Craft to cross-examine Bradley regarding whether Ritz-Craft's design of the basement complied with Vermont's energy code and to question its own expert architect, Russell, on this issue even though it was not contained in Russell's report. Counsel for Ritz-Craft did in fact cross-examine Bradley on the issue (*see* Doc. 167 at 155, 163–68 (Bradley trial testimony)), pointing out that his testimony at trial differed from his earlier testimony in deposition and asking him to explain the change in opinion (*id.* at 166–67). Bradley's primary reply was simply that he did not testify about "unconditioned space" at his deposition. (*Id.* at 167.) Moreover, after reviewing Bradley's testimony overnight, Russell refuted Bradley's testimony, advising the jury that "the Ritz-Craft design [of the modular home] *did* comply with the energy code" and that "a lot of the work that was done . . . or not done properly *by the builder* on site really accounted for the issues that were found and documented by Bradley." (Doc. 165 at 45:3–7 (Russell trial testimony) (emphases added).) Upon questioning by Ritz-Craft, Russell repeatedly confirmed that Ritz-Craft's plans for the home complied with Vermont's energy code and that any deficiencies in the home's energy efficiency were the fault of the builder not Ritz-Craft. (*Id.* at 45–49.)

Therefore, the jury was provided with evidence on both sides and was tasked with assessing the credibility of each expert in determining whether Ritz-Craft's design of Plaintiffs' home complied with Vermont's energy code based on the placement of the heating system in an unconditioned space. Ritz-Craft has failed to identify any information that it would have presented to the jury had the relevant opinion been disclosed earlier, or any other prejudice resulting from the testimony. At most, the allowance of Bradley's testimony was harmless error. Notably, given the elements of a VCPA claim (*see* Doc. 131 (Jury Charge), at 13; Doc. 134 (Verdict Form), at 1–2), the jury was not required to find that Ritz-Craft's design of the home failed to comply with Vermont's energy code in order to conclude that Ritz-Craft violated the VCPA.

### F.     Instruction to Jury Regarding Mountain View

Finally, Ritz-Craft asserts that the Court's instruction to the jury regarding Mountain View's involvement in this lawsuit was insufficient. (Doc. 169 at 19–20.) The Jury Charge contains the following references to Mountain View:

- As you have seen and heard in this trial, this case involves a modular home manufactured by Ritz-Craft, sold to Plaintiffs by Mountain View . . . , and installed on Plaintiffs' property in Vermont by Mountain View and its subcontractors. *I remind you that claims concerning Mountain View's liability are not before you.* (Doc. 131 at 11 (emphasis added).)

- Ritz-Craft further claims that it had no control or involvement in Plaintiffs' purchase of the modular home from Mountain View and no role or responsibility regarding any work performed on the home by Mountain View or its subcontractors at the home site. According to Ritz-Craft, its only obligation to Plaintiffs was to deliver the modular home as ordered by Mountain View; and it met that obligation. (*Id.* at 12.)

- Plaintiffs claim that Ritz-Craft committed unfair or deceptive acts in violation of the CPA by: (a) . . . ; (b) failing to disclose to Plaintiffs that the energy efficiency of the modular home would be dependent on the work performed by Mountain View; and (c) failing to disclose to Plaintiffs information concerning Ritz-Craft's relationship with "approved" builders like Mountain View and the process by which a builder like Mountain View became "approved" by Ritz-Craft. (*Id.* at 12–13.)

Ritz-Craft claims these instructions were "too limited" because they "failed to give the jury the complete picture of the litigation, leaving [the jury] to decide the claims against Ritz-Craft in a vacuum." (Doc. 169 at 20.) Ritz-Craft provides no legal support for this argument. Moreover, it cannot be argued that these instructions misled or confused the jury about either Mountain View's or Ritz-Craft's involvement in this lawsuit. *See Luciano v. Olsten Corp.*, 110 F.3d 210, 218 (2d Cir. 1997) ("[W]e will not grant a new trial, unless, taken as a whole, the jury instructions gave a misleading impression or inadequate understanding of the law." (internal quotation marks omitted)). Throughout the trial, the jury heard evidence, as necessary, about Mountain View's involvement in the facts underlying Plaintiffs' claims. There was no reason for the jury to be instructed about Mountain View's default, however, and this information may have misled or confused the jury.

For these reasons, the Court DENIES Ritz-Craft's Motion for Judgment as a Matter of Law under Rule 50(b) and holds that the evidence, viewed in a "light most favorable" to Plaintiffs, is sufficient "to permit a reasonable juror to find in [Plaintiffs'] favor." *Galdieri*, 136 F.3d at 289.

## Motion for a New Trial

In the alternative, relying on Rule 59(a) of the Federal Rules of Civil Procedure, Ritz-Craft argues that the Court should order a new trial to prevent injustice or to

correct a verdict that is contrary to the weight of the evidence. (*See* Doc. 169 at 4–5, 20–21.) Specifically, Ritz-Craft seeks a new trial on the following two grounds: (1) the verdict may be based on Ritz-Craft's alleged misrepresentations regarding "maximum energy efficiency," but this phrase is a statement of opinion, not fact, and thus not actionable under the VCPA; and (2) Ritz-Craft could not have violated the VCPA because (a) Plaintiffs had knowledge of the modular home industry and the work to be performed by Mountain View prior to their purchase of the home, and (b) Plaintiffs selected and had an ongoing relationship with Mountain View prior to contacting Ritz-Craft. (*Id.* at 21.)

## I.      Legal Standard

The standard for granting a new trial is less stringent than that for judgment as a matter of law. *See Katara v. D.E. Jones Commodities, Inc.*, 835 F.2d 966, 970 (2d Cir. 1987). On a motion for new trial, the judge may set aside the verdict even though there is substantial evidence to support it. *Am. Nat'l Fire Ins. Co. v. Mirasco, Inc.*, 451 F. Supp. 2d 576, 582 (S.D.N.Y. 2006); *see Crawford v. Tribeca Lending Corp.*, 815 F.3d 121, 128 (2d Cir. 2016) ("A district court may grant a Rule 59 motion—even if some evidence supports the verdict"). The court may weigh the evidence for itself without viewing it in the light most favorable to the verdict winner. *Am. Nat'l Fire Ins. Co.*, 451 F. Supp. 2d at 582; *see Song*, 957 F.2d at 1047. Still, "[t]he district court ordinarily should not grant a new trial unless it is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 370 (2d Cir. 1988); *see Kosmynka*, 462 F.3d at 82. And "a trial judge should not be quick to revisit a jury's credibility

determinations, and must proceed 'with caution and great restraint' when asked to do so." *Crawford*, 815 F.3d at 128 (quoting *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012)).

Moreover, "Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Sequa Corp.*, 156 F.3d at 144. The primary grounds for granting a Rule 59 motion turn on "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks omitted). "In passing on a motion for a new trial, a district court exercises broad discretion." *Olson v. Bradrick*, 645 F. Supp. 645, 654 (D. Conn. 1986) (citing *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984)).

## II.   Analysis

Ritz-Craft moves in the alternative for a new trial on principally the same grounds for which it moves for judgment as a matter of law. (*See* Doc. 169 at 20 (seeking a new trial "for the reasons set forth above").) Ritz-Craft presents no intervening change of law, new evidence, or clear error or manifest injustice in the jury verdict. Rather, the verdict suggests that the jury found Plaintiffs' witnesses sufficiently credible, or Ritz-Craft's witnesses sufficiently incredible, to warrant a verdict in Plaintiffs' favor on the VCPA claim. There is nothing in the record to warrant upsetting the verdict. Therefore, for the reasons explained above, and finding that the jury did not reach a "seriously erroneous result" and that the verdict is not a

"miscarriage of justice," *Kosmynka*, 462 F.3d at 82, the Court DENIES Ritz-Craft's alternative Motion for a New Trial under Rule 59(a).

## Conclusion

For these reasons, the Court DENIES Ritz-Craft's Supplemental Motion for Post-Trial Relief (Doc. 169) and orders that judgment be entered in favor of Plaintiffs in accordance with the jury verdict and the Court's ruling on Plaintiffs' Motion for Costs and Attorney Fees (Doc. 141), which is filed simultaneously with this Order. Ritz-Craft's previously filed Motions for Post-Trial Relief (Docs. 140 and 147) are dismissed as moot.  (*See supra* p. 2, note 1.)

Dated at Burlington, in the District of Vermont, this 12th day of February 2018.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge