UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Carmine Centrella and
Mary Brennan-Centrella,

      Plaintiffs,

      v.                          Civil Action No. 2:14-cv-00111-jmc

Ritz-Craft Corporation of Pennsylvania, Inc.,
and Mountain View Modular Homes, Inc.,

      Defendants.

## **OPINION AND ORDER**
(Docs. 139, 141)

In June 2014, Plaintiffs Carmine Centrella and Mary Brennan-Centrella commenced this action against Defendants Ritz-Craft Corporation of Pennsylvania, Inc., and Mountain View Modular Homes, Inc., alleging violations of the Vermont Consumer Protection Act (VCPA) and breaches of express and implied warranties in relation to Plaintiffs' purchase of a modular home that was manufactured by Ritz-Craft and installed on Plaintiffs' land by Mountain View. (Doc. 1.) About a year after the suit was filed, in June 2015, the Clerk of Court entered default against Mountain View pursuant to Federal Rule of Civil Procedure 55(a), leaving Ritz-Craft as the only active defendant in the case. (Doc. 55.) For the next two years, Plaintiffs and Ritz-Craft engaged in litigation activity including but not limited to: exchanging written discovery; conducting depositions; preparing and filing motions including Plaintiffs'

Motion to Amend the Complaint and Ritz-Craft's Motion for Summary Judgment; and attending two failed mediations.

In August 2017, a five-day jury trial was held. Plaintiffs sought to prove that Ritz-Craft committed unfair or deceptive acts or omissions that were likely to mislead Plaintiffs into purchasing the modular home, in violation of the VCPA; and that the home did not comply with Vermont's energy code, was not energy efficient, was not constructed with good workmanship, and was not fit for the purposes for which Plaintiffs purchased it, in violation of certain express and implied warranties made by Ritz-Craft to Plaintiffs before or at the time of purchase. Ritz-Craft denied these allegations, asserting that, at the time the modular home was delivered to Mountain View, it was in compliance with all representations and warranties issued by Ritz-Craft and with Vermont's energy code and standards of energy efficiency. Ritz-Craft further attempted to show that it had no control or involvement in Plaintiffs' purchase of the modular home from Mountain View and no responsibility for the work performed on the home by Mountain View or its subcontractors at the home site.

At the close of Plaintiffs' evidence, the Court granted in part Ritz-Craft's oral motion under Rule 50 of the Federal Rules of Civil Procedure and dismissed Plaintiffs' claim for exemplary damages. On August 14, 2017, the jury found in favor of Plaintiffs on the VCPA claim but rejected Plaintiffs' warranty claims against Ritz-Craft. (Doc. 134.) On the VCPA claim, the jury awarded Plaintiffs their consideration paid to Ritz-Craft for the modular home, in the stipulated amount of $94,262. (*Id.* at 2.)

Pending before the Court is Plaintiffs' Application for Costs and Attorney Fees, wherein Plaintiffs seek an award of $165,418.50 in attorney fees adjusted upward based on a .4 multiplier for a total fee award of $231,585.90, plus $7,567.03 in costs. (Doc. 141 at 5, 11.) Ritz-Craft filed an Opposition to the Application (Doc. 151); and thereafter, Plaintiffs filed a Reply (Doc. 153), and Ritz-Craft filed a Sur-Reply (Doc. 161). Also pending before the Court is Plaintiffs' Motion for Prejudgment Interest, wherein Plaintiffs request that the Court award them prejudgment interest at a rate of 12% per annum from the date of the Complaint's filing through the date of entry of judgment. (Doc. 139 at 3–4.) Ritz-Craft again filed an Opposition (Doc. 150), and Plaintiffs filed a Reply (Doc. 154). Ritz-Craft's Supplemental Motion for Post-Trial Relief pursuant to Rules 50 and 59 of the Federal Rules of Civil Procedure is also pending. (Doc. 169; *see* Docs. 140, 147.) Therein, Ritz-Craft seeks judgment as a matter of law or, in the alternative, a new trial. (*Id.*) Plaintiffs filed an Opposition to that Motion (Doc. 162), and Ritz-Craft filed a Reply (Doc. 163). This Opinion and Order addresses Plaintiffs' Application for Costs and Attorney Fees (Doc. 141) and Plaintiffs' Motion for Prejudgment Interest (Doc. 139). Ritz-Craft's Supplemental Motion for Post-Trial Relief (Doc. 169) is addressed in a separate Opinion and Order which is filed simultaneously with this ruling.

Before analyzing the substance of Plaintiffs' Application for Costs and Attorney Fees, the parties' discovery dispute related to the Application must be addressed. On September 18, 2017, the Court granted Ritz-Craft's unopposed Motion for Extension of Time to Respond to Plaintiffs' Post-Trial Motions—including the pending Application for Costs and Attorney Fees and Motion for Prejudgment Interest—setting the new

due date at October 19, 2017.  (Docs. 143, 144.)  On October 17, two days before Ritz-Craft's responses to Plaintiffs' Application for Costs and Attorney Fees and Motion for Prejudgment Interest were due, Ritz-Craft filed an "Expedited Motion for Additional Extension of Time to Respond to Plaintiffs' Post-Trial Motions."  (Doc. 148.)  Therein, Ritz-Craft requested an additional extension of time, until November 13, to respond to Plaintiffs' Application for Costs and Attorney Fees and Motion for Prejudgment Interest, asserting that: (1) this would "put all pending post-trial motions on the same track, thereby eliminating potential confusion and promoting efficiency and judicial economy"; and (2) Plaintiffs' post-trial motions "are lengthy and raise a number of factual and legal issues that must be addressed" with respect to Plaintiffs' request for attorney fees and costs, requiring additional time for Ritz-Craft to respond.  (*Id.* at 1. (footnote omitted))  Ritz-Craft further explained:

> Ritz-Craft has determined that additional information is needed from Plaintiffs so that Ritz-Craft can fairly oppose Plaintiffs' post-trial motions, including but not limited to the fee agreement between Plaintiffs and their counsel (which Plaintiffs reference several times in support of their fee application) and the information (e.g., invoices) from which the billing summaries submitted by Plaintiffs were prepared (particularly because the summaries themselves do not add up in all respects).

(*Id.* at 2.)  Plaintiffs promptly filed a Response in Opposition to Ritz-Craft's "Expedited Motion," pointing out that Ritz-Craft waited until "[m]ore than five weeks after receiving [Plaintiffs'] post-trial motions" to begin to request additional documents from Plaintiffs.  (Doc. 149 at 1.)  On October 19, despite its October 17 filing seeking an extension of time to file responses to Plaintiffs' post-trial motions, Ritz-Craft filed Oppositions to each of Plaintiffs' post-trial motions.  (*See* Docs. 150, 151.)  Therefore, on October 23, the Court issued a text order stating that Ritz-Craft's "Expedited

Motion for Extension of Time to File Response" was moot, in light of Ritz-Craft's October 19 filings. (Doc. 152.)

For the reasons stated below, Plaintiffs' Application for Costs and Attorney Fees (Doc. 141) is GRANTED in part and DENIED in part, and the Court awards Plaintiffs **$127,273.50** in attorney fees and **$7,567.03** in costs, to total **$134,840.53**. The Court DENIES Plaintiffs' Motion for Prejudgment Interest (Doc. 139).

## Application for Costs and Attorney Fees

Plaintiffs make the following arguments in support of their request for an award of attorney fees totaling $231,585.90 and costs totaling $7,567.03: (1) because the jury returned a verdict declaring that Ritz-Craft violated the VCPA, Ritz-Craft is required to pay Plaintiffs' legal fees (Doc. 141 at 5–6); (2) to calculate those fees, the Court should use the lodestar formula of reasonable time multiplied by reasonable hourly rate (*id.* at 6); (3) the amount of time Plaintiffs' counsel spent on this case—as documented in their billing records and explained in their affidavits—was necessary, appropriate, and reasonable (Doc. 141-5 at 15–19); (4) the hourly rates sought by Plaintiffs' counsel are usual, customary, and reasonable (*id.* at 19); (4) applying a modifier of .4 to upwardly adjust the fees is reasonable and warranted, considering the skill and experience of Plaintiffs' counsel, the excellent results obtained, and the contingent nature of the fee arrangement (*id.* at 19–23; Doc. 141 at 9–10); and (5) the costs incurred by Plaintiffs' counsel were necessary, appropriate, and reasonable (Doc. 141 at 10; Doc. 141-5 at 23–24). For support, Plaintiffs submit the Affidavit of attorney expert Gregory Mertz (Doc. 141-5), as well as the Affidavit of Plaintiffs' counsel Joshua Simonds (Doc. 141-1), the billing sheets of Plaintiffs' counsel Kathryn

Kent and Joshua Simonds (Docs. 141-2 and 141-3), respectively, and a record of "Reimbursable Expenses" incurred by Plaintiffs during the litigation (Doc. 141-4).

In response, Ritz-Craft makes the following arguments: (1) the hourly rates and number of hours claimed are unsubstantiated, unreasonable, and inconsistent (Doc. 151 at 2–7); (2) the amount of fees sought is "*more than double*" the amount awarded by the jury and is thus unreasonable "on its face" (*id.* at 5)[1]; (3) Plaintiffs are not entitled to an upward modifier because the case involved a straightforward VCPA claim, Mountain View's default made it easier for Plaintiffs to succeed, Plaintiffs succeeded on only one of three claims, and this was a purely private dispute with no public purpose (*id.* at 7–10); (4) the fees should be reduced by at least 5% due to the limited experience of Plaintiffs' counsel particularly Attorney Kent, the limited information supplied by Plaintiffs in support of their Application, and "applicable Vermont law" (*id.* at 11); and (5) the fees and costs awarded must exclude amounts

---

[1] At the outset, the Court rejects Ritz-Craft's argument that Plaintiffs' fee request should be rejected because it is more than double Plaintiffs' recovery. The Vermont Supreme Court rejected this argument in *L'Esperance v. Benware*, 2003 VT 43, 175 Vt. 292, 830 A.2d 675, explaining:

> An attorney does not receive a "windfall" merely because the award of attorney's fees is not proportionate to the award of damages. . . . [T]h[e] legislative intent [behind the Consumer Fraud Act] would be frustrated if the courts were required to measure a fee award against the limited amount of recoverable damages in a consumer fraud claim.

*Id.* at ¶ 27 (citing *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) (rejecting proposition that fee awards should necessarily be proportionate to damages recovered) and *Gramatan Home Inv'rs Corp. v. Starling*, 143 Vt. 527, 536, 470 A.2d 1157 (1983) (holding that relief available under Vermont's consumer fraud laws, including provision for attorney fees, "was fashioned in order to promote and encourage prosecution of individual consumer fraud claims")). The Second Circuit has held similarly, stating: "A presumptively correct 'lodestar' figure should not be reduced simply because a plaintiff recovered a low damage award." *Cowan v. Prudential Ins. Co. of Am.*, 935 F.2d 522, 526 (2d Cir. 1991); *see also Kassim v. City of Schenectady*, 415 F.3d 246, 256 (2d Cir. 2005) (permissible to consider degree of success in awarding fees but not disproportionality of "final result"); *DiFilippo v. Morizio*, 759 F.2d 231, 235 (2d Cir. 1985) ("We believe a reduction [of the lodestar] made on the grounds of a low award to be error unless the size of the award is the result of the quality of representation.").

incurred for the purpose of establishing damages for Ritz-Craft's alleged breach of warranties because Plaintiffs did not succeed on those claims and they did not share a common core of facts with the VCPA claims (*id.* at 11–14).[2] For support, Ritz-Craft submits the Declaration of attorney expert Ian Carleton (Doc. 151-1) and additional evidence (*see* Docs. 151-2–151-8).

In their Reply to Ritz-Craft's Opposition, Plaintiffs provide more detailed information regarding the relevant attorney fee agreement, counsels' hourly rates, counsels' experience, and counsels' billing practices generally and in this particular case.[3] (Doc. 153.) In addition, Plaintiffs submitted supplemental affidavits of counsel and from attorney expert Mertz to provide further explanation to support their Application. (*See* Docs. 153-1 and 153-2.) Moreover, for the first time, Plaintiffs cite to the "United States Consumer Law Attorney Fee Survey Report 2015–2016" in support of the hourly rates sought. (Doc. 153 at 9.) Plaintiffs reiterate that they are entitled to an upward modifier, this time focusing on the *Johnson* factors, including: the time and labor required in the case, the novelty and difficulty of the questions at issue, the

---

[2] Ritz-Craft also argues that no fees should be awarded to Plaintiffs because they failed to provide the documentation necessary to support their Application. (Doc. 151 at 1–4; *see also* Doc. 161 at 3–5.) The Court rejects this argument for the reasons explained generally in Plaintiffs' Reply to Ritz-Craft's Opposition and specifically in the attorney affidavits attached to the Reply. (*See* Doc. 153 at 1–2; Doc. 153-1 at 1–6, ¶¶ 2–12; Doc. 153-2 at 5–7, ¶¶ 15–19; *see also* Doc. 149 at 2, Doc. 149-2 at 1–2.) Moreover, the Court finds that the record contains all the documentation necessary to determine whether the fees requested and the hourly rates billed are reasonable, and whether an upward or downward modifier is appropriate in this case, as discussed herein; the fact that Ritz-Craft was able to adequately and thoroughly respond to Plaintiffs' Application (*see* Docs. 151, 161) demonstrates this point.

[3] Plaintiffs' Reply exceeds the ten pages allowed under Local Rule 7(a)(5)(B) and includes new arguments and evidence, including attorney affidavits. (*See* Doc. 153.) Nonetheless, as stated in the November 15, 2017 text order, the Court allowed the filing. (Doc. 160.)

skill requisite to perform the legal services properly, the preclusion of other employment by the attorneys due to their acceptance of the case, the customary fee in Vermont, the fact that the fees were not fixed and counsel assumed a financial risk in taking the case, the results obtained not only for Plaintiffs but also for consumers generally, and awards in similar cases. (*Id.* at 10–15.) Plaintiffs also refute Ritz-Craft's contention that there was not a common core of facts shared by all three claims, arguing that the establishment of the modular home's failure to meet energy code standards was directly relevant to the warranty claims and the VCPA claim. (*Id.* at 15–17.)

Approximately two weeks after Plaintiffs filed their Reply, Ritz-Craft filed a Motion for Leave to File Sur-Reply Brief in Response to Plaintiffs' Application for Costs and Attorney Fees. (Doc. 158.) The Court granted the Motion in a text order, reasoning that Plaintiffs' Reply "raised new arguments and new evidence, including affidavits of counsel, and was in excess of the ten-page limit provided in Local Rule 7(a)(5)(B)." (Doc. 160.) The next day, Ritz-Craft filed its Sur-Reply, with attached Supplemental Declaration of attorney expert Carleton. (Docs. 161, 161-1.) Therein, Ritz-Craft reiterates its arguments that the Application for Costs and Attorney Fees is unsubstantiated and unsupported, particularly due to Plaintiffs' failure to produce Attorney Kent's fee agreement with Plaintiffs, and that the hourly rates and number of hours claimed are unreasonable. (Doc. 161 at 3–7.) Moreover, Ritz-Craft argues that, despite Plaintiffs' request, the Court should join other courts in declining to rely on the "United States Consumer Law Attorney Fee Survey Report 2015–2016," as

there is no evidence of its reliability and it does not provide reliable support for counsels' rates in this case.[4]  (*Id.* at 7.)  Finally, Ritz-Craft responds to the *Johnson*-factor analysis contained in Plaintiffs' Reply.  (*Id.* at 8–9.)

## I.    Legal Standard

In Vermont, parties are ordinarily responsible for their own legal fees and costs of litigation.  *See Perez v. Travelers Ins. ex rel. Ames Dep't Stores, Inc.*, 2006 VT 123, ¶ 8, 181 Vt. 45, 915 A.2d 750; *L'Esperance v. Benware*, 2003 VT 43, ¶ 21, 175 Vt. 292, 830 A.2d 675.  The burden of bearing one's individual costs, however, may be relieved by statute or contract.  *Gramatan Home Inv'rs Corp. v. Starling*, 143 Vt. 527, 535, 470 A.2d 1157 (1983).  Here, the VCPA provides for an award of "reasonable attorney's fees" to plaintiffs who demonstrate a violation of the statute.  9 V.S.A. § 2461(b).  Thus, the Vermont Supreme Court has held: "Where a court finds that the Consumer Fraud Act has been violated, it is not within the court's discretion to determine whether to award such fees, but rather its task is to determine what constitutes reasonable fees in each instance."  *L'Esperance*, 2003 VT 43, ¶ 21 (citation omitted); *see McKinstry v. Fecteau Residential Homes, Inc.*, 2015 VT 125, ¶ 13, 200 Vt. 392, 131 A.3d 1123.  In determining an award of attorney fees under Vermont law, the touchstone is reasonableness.  *See Human Rights Comm'n v. LaBrie, Inc.*, 164 Vt. 237,

---

[4]  The Court agrees with Ritz-Craft and finds that the "United States Consumer Law Attorney Fee Survey Report 2015–2016" is not a reliable source for determining reasonable billing rates for counsel in this case.  (*See* Doc. 161-2.)  Surely, the Survey's indication that the "Median Metropolitan Attorney Rate" in Vermont is $500 per hour (Doc. 161-2 at 2) is inaccurate (*see* Doc. 161-1 at 2).  Moreover, not only did Plaintiffs improperly introduce the document for the first time in their Reply, they failed to attach the relevant portions of it to the Reply for the Court's ease of reference.  (*See* Doc. 153 at 9, 12, 15.)

250, 668 A.2d 659 (1995) ("Fee awards are to be reasonable, reasonable as to billing rates and reasonable as to the number of hours spent in advancing the successful claims." (internal quotation marks omitted)).

Trial courts have "substantial discretion" in deciding what constitutes a reasonable fee amount under the circumstances of a particular case. *Estate of DeVoyd v. Lanoue*, No. 2008–465, 2009 WL 2411897, at *2 (Vt. Apr. 14, 2009) (citing *Perez*, 2006 VT 123, ¶¶ 8, 13). The first step in making that decision is calculating the "lodestar," which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)); *see Perez*, 2006 VT 123, ¶ 10; *L'Esperance*, 2003 VT 43, ¶ 22. Calculation of the lodestar creates a "presumptively reasonable fee." *Millea*, 658 F.3d at 166; *Arbor Hill*, 522 F.3d at 183. After the lodestar has been determined, the court may then adjust the fee amount upward or downward based on various factors, including but not limited to, the novelty of the legal issues, the experience of the attorneys, and the results obtained in the litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3, 433 (1983); *see L'Esperance*, 2003 VT 43, ¶ 22.

A request for attorney fees should not result in a "second major litigation"; "[i]deally, . . . litigants will settle the amount of a fee." *Hensley*, 461 U.S. at 437. Where settlement is not possible, however, the fee applicant—Plaintiffs here—"bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Id.*

## II.  Reasonableness of Hourly Rates

The standard for calculating a reasonable hourly rate is "relatively flexible."

*Perez*, 915 A.2d at 755–56.  "The reasonable hourly rate is the rate a paying client

would be willing to pay." *Arbor Hill*, 522 F.3d at 190.  In determining what this

amount is, the Second Circuit has instructed district courts to consider the 12 factors

set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974),

abrogated on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87, 92–93 (1989).  *See*

*Arbor Hill*, 522 F.3d at 190.  Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the
> questions; (3) the level of skill required to perform the legal service
> properly; (4) the preclusion of employment by the attorney due to
> acceptance of the case; (5) the attorney's customary hourly rate;
> (6) whether the fee is fixed or contingent; (7) the time limitations imposed
> by the client or the circumstances; (8) the amount involved in the case and
> the results obtained; (9) the experience, reputation, and ability of the
> attorneys; (10) the "undesirability" of the case; (11) the nature and length
> of the professional relationship with the client; and (12) awards in similar
> cases.

*Id.* at 186 n.3 (citing *Johnson*, 488 F.2d at 717–19).

The court should also consider that "a reasonable, paying client wishes to spend

the minimum necessary to litigate the case effectively," and that "such an individual

might be able to negotiate with his or her attorneys, using their desire to obtain the

reputational benefits that might accrue from being associated with the case." *Id.* at

190.  Additionally, in determining what a reasonable hourly rate is, the court should

consider the "prevailing market rate" in the district where the court sits, i.e., "the rate

'prevailing in the [relevant] community for similar services by lawyers of reasonably

comparable skill, experience, and reputation.'" *Farbotko v. Clinton County of New*

*York*, 433 F.3d 204, 208 (2d Cir. 2005) (alteration in original) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) and citing *Cohen v. W. Haven Bd. of Police Comm'rs*, 638 F.2d 496, 506 (2d Cir. 1980) ("[F]ees that would be charged for similar work by attorneys of like skill in the area" are the "starting point for determination of a reasonable award.")); *see Arbor Hill*, 522 F.3d at 183 ("district court should generally use the prevailing hourly rate in the district where it sits to calculate . . . the 'lodestar'"); *Cabrera v. Jakabovitz*, 24 F.3d 372, 393 (2d Cir. 1994) (court must consider "the prevailing marketplace rates for the type of work performed and the experience of the attorneys"); *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994) ("'prevailing community' the district court should consider to determine the 'lodestar' figure is the district in which the court sits" (internal quotation marks omitted)). Because a client who may recover attorney fees through a fee-shifting statute may have little incentive to negotiate rates prior to litigation, "the district court must act later to ensure that the attorney does not recoup fees that the market would not otherwise bear." *Arbor Hill*, 522 F.3d at 184. The district court "bears the burden of disciplining the market" and setting a "reasonable hourly rate" for the services of counsel. *Id.*; *see also McDaniel v. County of Schenectady*, 595 F.3d 411, 420 (2d Cir. 2010) (a presumptively reasonable fee represents an approximation of what "a competitive market would bear").

The burden rests with the attorney seeking a fee award to establish his or her hourly rate "with satisfactory evidence—in addition to the attorney's own affidavits." *Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 298 (E.D.N.Y. 2012) (internal quotation marks omitted). Here, Plaintiffs request an hourly rate of $250 per hour for

Attorney Kent and $325 per hour for Attorney Simonds. (*See* Doc. 141-5 at 19.) In support, as noted above, Plaintiffs submit affidavits of Attorneys Kent and Simonds and the Affidavit of attorney expert Mertz, who states: "Having practiced in the greater Burlington area for more than 25 years, I can attest . . . that these rates are within the range of rates charged by local attorneys with comparable levels of skill and experience." (*Id.*) Ritz-Craft claims that both Kent's and Simonds's rates are excessive and suggests that rates of $200 and $300 per hour (or less), respectively, are more appropriate. (*See* Doc. 151 at 6–7; Doc. 151-1 at 5.) This claim is supported by the Affidavit of attorney expert Carleton, who states: "Counsel's proposed hourly rates either lack substantiation (in the case of Kent) or are inconsistent with other publicly available information (in the case of Simonds)." (Doc. 151-1 at 5.)

## A.     Attorney Kent's Hourly Rate

Attorney Kent was primarily responsible for discovery and motion practice in this case, and she was second chair at the trial. (Doc. 141-1 at 2–3.) Kent graduated from Vermont Law School in 2006 and started Kent Law Practice, PLLC in Montpelier in 2007. (*Id.* at 1–2.) In 2010, she relocated her practice to Burlington, focusing on intellectual property, trademark litigation, and consumer protection. (*Id.* at 2.) Because she practices mostly in federal law, Kent has clients located throughout the United States. (Doc. 153-2 at 2.) She is a Fellow of the American Bar Foundation and received an award for outstanding leadership contributions to the Intellectual Property Section of the American Bar. (*Id.*) Kent recently joined a "trademark colleague" in establishing Lewis Kent, LLP, an intellectual property "boutique partnership" with offices in Vermont and California. (*Id.* at 3.) She also serves as "Of

Counsel" for the law firm Merritt & Merritt. (*Id.* at 4.) Kent does not typically work on contingency and admittedly "do[es] not have a long history of fee awards." (*Id.* at 5.) Her "usual and customary" billing rate during this litigation was $250 per hour. (*Id.* at 1.)

The Court does not question the veracity of the statements made by Kent in her Affidavit, with respect to her affiliations with several law firms and other professional groups. However, Kent has failed to support a rate of $250 per hour in this case. Much of her Affidavit discusses her specialization in intellectual property and trademark litigation, presumably because this type of legal work usually commands a higher hourly rate than a more generalized practice. (*Id.* at 2–5.) But Kent's work in this case did not involve any intellectual property or trademark issues. Rather, this case involved relatively straightforward consumer protection and contract issues; the case did not present any novel or difficult questions of law and did not require a high level of skill.

In light of the prevailing hourly rates in the community and the other *Johnson* factors set forth in *Arbor Hill* and quoted above, the Court sets Kent's hourly rate at $225 per hour, finding that this is a reasonable rate, given Kent's skill and experience, and considering the rates charged by local attorneys with comparable levels of skill and experience. This rate is consistent with the rates set by other contemporary cases in this district, accounting for the passage of time since their issuance. *See, e.g.*, *IMS Health Inc. v. Sorrell*, No. 1:07-cv-188-jgm, 2012 WL 2915845, at *3 (D. Vt. July 17, 2012) (Murtha, J.) ("[T]his Court regularly awards civil rights plaintiffs hourly rates of $225 for partners, $160–$180 for associates, and $85 for paralegals."); *id.* at *7

(finding that "a reasonable [hourly] Vermont rate for . . . work performed after June 2011" is "$300 for an experienced partner and $200 for a senior associate" (citing *Diamond v. O'Connor*, No. 2:05-CV-279, 2010 WL 9459022 (D. Vt. June 10, 2010), *aff'd*, 417 F. App'x 104 (2d Cir. 2011))); *Diamond v. O'Connor*, No. 2:05-cv-279, 2011 WL 2268581, at *2 (D. Vt. June 7, 2011) (Sessions, J.) ("the rate of pay in this case ranges from $100 to $225 per hour . . . , which is in line with [the fees] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation" (second alteration in original) (internal quotation marks omitted)); *Arroyo v. Milton Acad.*, Case No. 5:10-cv-117, 2011 WL 13217008, at *2 (D. Vt. June 3, 2011) (Reiss, J.) (setting hourly rate at $200 per hour in diversity action against private preparatory school for premises liability and negligence); *Wells Fargo Bank, N.A. v. Sinnott*, No. 2:07–CV–169, 2010 WL 297830, at * 7 (D. Vt. Jan. 19, 2010) (Reiss, J.) (finding that $200 per hour was a reasonable rate for a partner prosecuting a foreclosure action that involved a number of counterclaims brought by the defendant); *White River Amusement Pub, Inc. v. Town of Hartford, Vt.*, No. 1:02–CV–320, 2008 WL 2404029, at *3 (D. Vt. June 10, 2008) (Murtha, J.) (stating that fee "awards made in similar cases [involving a constitutional challenge to a city ordinance] in Vermont have thus far peaked at $225 per hour for partners"); *L'Esperance*, 2003 VT 43, ¶ 23 (calculating lodestar figure based on $135 per hour rate); *United States ex rel. Poulton v. Anesthesia Assocs. of Burlington, Inc.*, 87 F. Supp. 2d 351, 356–57 (D. Vt. 2000) ("[T]he hourly rate of $225 per hour for [partners] and $160 for associates is suitable to both Vermont standards and the complexity of this case, and is found to be appropriate in this case.").

### B. Attorney Simonds's Hourly Rate

Attorney Simonds was lead counsel at the trial of this case, and also handled court appearances, defended one deposition, and attended part of a mediation. Simonds graduated from Boston College Law School in 1988 and began practicing in Massachusetts that year. (Doc. 141-1 at 3.) From 1988 until 1995, Simonds practiced with various Massachusetts law firms in the area of general civil litigation. (*Id.*) In 1996, Simonds moved to Vermont and practiced with a firm until 2001, when he formed the firm Mertz, Talbott & Simonds with two other attorneys. (*Id.*) In 2010, Simonds formed the Burlington Law Practice, PLLC, handling civil litigation cases in state and federal court. (*Id.*) Simonds has tried 26 jury trials and several bench trials, and has handled "a variety" of arbitrations and "summary proceedings involving testimony." (*Id.* at 9.) He has concentrated his practice exclusively on plaintiffs' work for the last 15 years, preferring to advocate for "impossible causes where the claim may be just but collection is difficult, the opponent is over[-]gunned[,] or the client is all too human and perhaps not . . . appealing to a jury." (*Id.* at 10.) Less than 5% of Simonds's practice over the last 10 or more years has been based on hourly billing; he principally represents clients on a contingency basis. (Doc. 153-1 at 2, 6.) Nonetheless, he is able to estimate that his "usual" billing rate, as of September 2017, is $325 per hour. (Doc. 141-1 at 3.)

As stated earlier, it is Attorney Simonds's duty to submit evidence to the Court demonstrating that his requested hourly rate is reasonable. *See Hensley*, 461 U.S. at 433. Yet he has failed to present any evidence supporting the requested rate. Rather, evidence before the Court reveals that in December 2016–which was just before

Simonds began keeping billing records for his work on this case (*see* Doc. 141-3 at 1)—Simonds's "usual billing rate" was "$275/hr." (*See* Doc. 151-4 at 4, Simonds's Affidavit filed in *Falcon Mgmt. Co. v. LeClair, et al.*, Vt. Super. Ct., Docket No. 723-7-15 Cncv.) In his Supplemental Affidavit, Simonds states that he increased his rate from $275 to $325 per hour in January 2017 (*see* Doc. 153-1 at 4), but he does not submit evidence or authority to the Court indicating that such an increase reflects the rate prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. Moreover, despite Simonds's claims to the contrary (*id.* at 7–8), it appears Simonds was awarded an hourly rate of only $230 in a recent case before the Vermont Superior Court. (*See* Doc. 151-5 at 5, Superior Court Judge Robert Mello's 2/3/17 "Ruling on Defendants' Post-Trial Motions," filed in *Falcon Mgmt. Co.*, Vt. Super. Ct., Docket No. 723-7-15 Cncv; *see also* Doc. 151-1 at 18–19.)

In light of the prevailing hourly rates in the community and the other *Johnson* factors, the Court sets Simonds's hourly rate at $275 per hour, finding that this is a reasonable rate, given Simonds's skill and experience, and considering the rates charged by local attorneys with comparable levels of skill and experience. This rate is consistent with the rates set by other contemporary cases in this district, as cited above with reference to Attorney Kent's rate.

## III. Reasonableness of Time Spent

Plaintiffs next bear the burden of establishing that the number of hours for which compensation is sought is reasonable. *Cruz*, 34 F.3d at 1160. "Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of

the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). "Hours that

are excessive, redundant, or otherwise unnecessary, are to be excluded; and in dealing

with such surplusage, the court has discretion simply to deduct a reasonable

percentage of the number of hours claimed as a practical means of trimming fat from a

fee application." *Id.* (citations and internal quotation marks omitted); *see also id.*

(upholding "20% reduction for vagueness, inconsistencies, and other deficiencies in the

billing records"); *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994) ("We do not

require that the court set forth item-by-item findings concerning what may be

countless objections to individual billing items."); *Matusick v. Erie Cty. Water Auth.*,

757 F.3d 31, 64 (2d Cir. 2014) (upholding district court's "across-the-board 50 percent

reduction based on a perceived lack of detail in the billing records").

The Second Circuit has held that the determination of reasonable hours

expended is "best made by the district court on the basis of its own assessment of what

is appropriate for the scope and complexity of the particular litigation." *New York

State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983);

*see also Lore v. City of Syracuse*, 670 F.3d 127, 175 (2d Cir. 2012) (holding that "the

district court, which is intimately familiar with the nuances of the case," is in the best

position to determine an appropriate fees award (internal quotation marks omitted)).

In making this decision, the district court "does not play the role of an uninformed

arbiter but may look to its own familiarity with the case and its experience generally

as well as to the evidentiary submissions and arguments of the parties." *Gierlinger v.

Gleason*, 160 F.3d 858, 876 (2d Cir. 1998) (quoting *DiFilippo v. Morizio*, 759 F.2d 231,

235–36 (2d Cir. 1985)).

Plaintiffs have submitted the billing records of Attorneys Kent and Simonds, as well as Affidavits from each counsel, indicating that: from April 2, 2014 through August 17, 2017, Kent spent 438 hours working on this case (Doc. 141-1 at 7–9; Doc. 141-2; Doc. 151-1 at 5), and from January 7 through September 5, 2017, Simonds spent 173.3 hours[5] working on this case (Doc. 141-1 at 8–9; Doc. 141-3; Doc. 153-1 at 3–5).  Ritz-Craft asserts that Simonds's specific billing entries appear reasonable but Kent's "appear inflated and/or inconsistent with Simonds'[s] billing."  (Doc. 151-1 at 5.)

The Court finds that the number of hours worked was reasonably necessary to the successful outcome for Plaintiffs—given the novelty of the issues, the needs for discovery, the motions filed and responded to, the two mediations, and the five-day jury trial—*with the following noted exceptions regarding Attorney Kent's hours*:

- 14.4 hours for work done from 5/10/14–5/14/14:  The Court finds this amount of time excessive, and reduces it by *4.4 hours*.

- .6 hours for work done on 11/3/14 (.3 hours) and on 6/1/15 (.3 hours), respectively:  Plaintiffs' counsel has agreed to deduct this time (*see* Doc. 153 at 6, 7), resulting in a reduction of *.6 hours*.

- 10.8 hours for written discovery work done on 1/28/15 (6.3 hours) and 6/22/15 (4.5 hours), respectively:  The Court finds this amount of time excessive and reduces it by *5 hours*.

---

[5] Simonds's billing statements and initial Affidavit contain mathematical errors and omissions, which Simonds corrected in the Supplemental Affidavit filed with his Reply.  (*See* Doc. 153-1 at 3–5; *see also* Doc. 151-1 at 5, 13–14.)  Given that Ritz-Craft was granted the opportunity to respond to these corrections in its Sur-Reply (*see* Doc. 158), the Court accepts the amended total number of hours expended by Simonds on this case (173.3) as the correct figure.

- 7 hours for written discovery work done on 1/29/15: The Court subtracts the full *7 hours* from this entry because the written discovery was directed at Mountain View not Ritz-Craft. (*See* Doc. 141-2 at 2.)

- 5.5 hours on 1/30/17 for Kent's attendance at the second deposition of Plaintiffs. The Court reduces this time by *4.3 hours*, finding it to be duplicative of the time Simonds spent on the deposition.

(*See* Doc. 141-2; Doc. 141-5 at 14–19; Doc. 151-1 at 19–21; Doc. 153 at 5–7.) Totaling these deductions, the Court reduces the hours billed by Kent by *21.3*. This results in a total of 416.7 reasonable hours billed by Kent and 173.3 reasonable hours billed by Simonds.

## IV. The Lodestar: Presumptively Reasonable Fee

Given the above findings, the presumptively reasonable fee for each of Plaintiffs' attorneys, respectively, and the total lodestar figure, is as follows:

| Attorney | Hourly Rate | Reasonable Hours | Fee |
|----------|-------------|------------------|-----|
| Kent | $225 | 416.7 | $93,757.50 |
| Simonds | $275 | 173.3 | $47,657.50 |
| TOTAL | | | **$141,415.00** |

## V. Adjustment to Lodestar

The product of a reasonable hourly rate times the reasonable hours worked does not end the inquiry; the court may adjust the lodestar upward or downward based on various factors, including but not limited to, the novelty of the legal issues, the experience of the attorneys, and the results obtained in the litigation. *Hensley*, 461 U.S. at 434; *L'Esperance*, 2003 VT 43, ¶ 22. The party advocating a departure from

the lodestar bears the burden of establishing that the adjustment is "*necessary* to the determination of a reasonable fee." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (internal quotation marks omitted); *see Perdue*, 559 U.S. at 546 ("a party seeking fees has the burden of identifying a factor that the lodestar does not adequately take into account and proving with specificity that an enhanced fee is justified"). Upward adjustments are only necessary in cases reflecting "exceptional success." *Hensley* at 435.

After considering Plaintiffs' arguments and the *Johnson* factors, the Court finds that an upward adjustment to the lodestar is not warranted. First, despite Plaintiffs' claim, there was nothing particularly difficult, complex, or novel about this case, especially the VCPA claim on which Plaintiffs succeeded. Rather, the VCPA claim involved fairly straightforward allegations regarding Ritz-Craft's misrepresentations about the subject modular home, which were made directly to Plaintiffs by Ritz-Craft representatives verbally, in print, and on a sales video. Second, although the result— a verdict requiring Ritz-Craft to pay Plaintiffs approximately $94,000—benefitted Plaintiffs, it wasn't overly beneficial to them. Rather, their award of approximately $94,000 is significantly less than the amount sought against Ritz-Craft: over $245,000, as pled in the Amended Complaint (*see* Doc. 77 at 11–12).

Third, it is unclear how much the public will benefit from the verdict generally, given the specific facts of this case, including Plaintiffs touring the Ritz-Craft factory prior to purchasing the modular home and Mountain View defaulting out of the case and trial proceeding against Ritz-Craft only. There is no evidence before the Court regarding how common factory tours like the one Plaintiffs had with Ritz-Craft are, or

about whether it is commonplace for the buyer of a modular home to make payment to both the manufacturer and the builder/seller, respectively, as occurred here. Moreover, Plaintiffs have submitted no evidence indicating that other consumers have been misled in a similar manner that Plaintiffs were. Nor have Plaintiffs produced evidence indicating that Ritz-Craft engaged in a pattern or history of misconduct or deceit with respect to their manufacture and distribution of modular homes.[6] *See Anderson v. Johnson*, 2011 VT 17, ¶ 12, 189 Vt. 603, 607–08, 19 A.3d 86, 91 (2011) (finding award of attorney fees to home purchasers improper, explaining: "[n]othing in the case suggests that the verdict will serve to deter future misconduct, educate consumers or vendors, or promote a more honest and open marketplace"; and, "Plaintiffs' suit . . . yielded no relief to plaintiffs, vindicated no significant legal rights, and advanced no broader public goals").

Fourth, Plaintiffs contend an enhanced fee award is warranted due to their "significant financial risk" in representing Plaintiffs, namely, Attorney Kent's agreement that "[P]laintiffs' maximum out[-]of[-]pocket expenditure for attorney fees [in this case] would be $18,000.00."[7] (Doc. 141-5 at 23; *see* Doc. 141 at 10 ("this matter is being handled on a basis where counsel will only obtain pay if they both win and have the Court award attorney[] fees"); Doc. 153-2 at 5–6.) But Plaintiffs have not produced the relevant agreement in conjunction with their Application for Costs and

---

6 Given this failure to produce evidence of Ritz-Craft's misconduct or deceit, the Court summarily dismissed Plaintiffs' exemplary damages claim against Ritz-Craft at the close of Plaintiffs' case at trial.

7 Attorney Kent clarified in her Affidavit that Plaintiffs made three payments to her over the course of this litigation: an initial $10,000 retainer payment at the beginning of the case, and then "[a]dditional amounts" on two later dates, to total $18,000. (Doc. 153-2 at 5–6.)

Attorney Fees, despite their expert attorney's apparent review of it (*see* Doc. 153-2 at 5), Ritz-Craft's requests for it (*see* Doc. 149 at 1; Doc. 149-1 at 1), and controlling law requiring the production of documentation reviewed by a testifying expert in connection with his or her testimony, *see Synthes Spine Co., L.P. v. Walden*, 232 F.R.D. 460, 463 (E.D. Pa. 2005); Fed. R. Civ. P. 26(a)(2)(B). The Court finds a degree of merit in Ritz-Craft's assertion that a request for an upward adjustment of fees that is based in part on counsel's allegedly unorthodox and financially "risky" agreement with his or her client should be accompanied by that agreement (*see* Doc. 151 at 2). But the issue is not dispositive, as even if Attorney Kent's fee agreement with Plaintiffs had been provided, it would likely not have affected the Court's decision.

Thus, Plaintiffs' request for an upward 40% adjustment to the lodestar is rejected. Instead, the Court finds that a downward adjustment is warranted—though in a lesser amount than requested by Ritz-Craft[8]—principally because Plaintiffs achieved success on only one of their three claims. "The United States Supreme Court has consistently stressed the importance of the degree of the plaintiff's success in the litigation as a factor affecting the size of the fee to be awarded." *Kassim v. City of Schenectady*, 415 F.3d 246, 252–56 (2d Cir. 2005). In *Hensley*, the plaintiffs brought numerous factually and legally distinct claims, achieving considerable success on some but no success on others. The district court awarded an attorney fee in the amount of the full lodestar, declining to eliminate attorney hours spent on unsuccessful claims.

---

[8] (*See* Doc. 151 at 10–11; Doc. 151-1 at 5, 26 (requesting a 5%–10% reduction because of the experience of Plaintiffs' counsel and other factors); Doc. 151 at 14; Doc. 151-1 at 5–6, 29 (requesting an additional 20% reduction because Plaintiffs succeeded on only one of three claims).)

*Hensley*, 461 U.S. 428–29. The Supreme Court vacated the award, however, explaining that "the most critical factor [in evaluating an attorney fee award] is the degree of success obtained." *Id.* at 436. The Court held as follows:

> [T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees . . . . Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But *where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.*

*Id.* at 434 (emphasis added). The Second Circuit has similarly held, and has "clearly adopted the view . . . that a district judge's authority to reduce the fee awarded to a prevailing plaintiff below the lodestar by reason of the plaintiff's 'partial or limited success' is not restricted either to cases of multiple discrete theories or to cases in which the plaintiff won only a nominal or technical victory." *Kassim*, 415 F.3d at 256; *see Cowan v. Prudential Ins. Co. of Am.*, 935 F.2d 522, 524 (2d Cir. 1991) ("allocation of fees between successful and unsuccessful claims necessarily lies largely in the discretion of the district court"); *Diamond*, 2010 WL 9459022, at *2 ("When a plaintiff succeeds on some but not all of his claims for relief, or against some but not all defendants, a fee reduction may be appropriate.").

Here, Plaintiffs succeeded on their VCPA claim but did not prevail on their request for exemplary damages under the VCPA and on each of their breach of warranty claims. A fee reduction is therefore appropriate. The reduction should be minimal, however, given that the case generally involved a common core of facts and

was litigated on related theories. Moreover, although Plaintiffs did not succeed on all claims, they did recover their full consideration paid to Ritz-Craft. Further, it is possible that, as Plaintiffs surmise, "[t]his case will alert manufacturers to potential liability arising from advertisements, representations, and failure to meet energy codes." (Doc. 153 at 14–15.)

The Court does not agree with Ritz-Craft's attorney expert that "a bright line can be drawn" between the attorney work done on different claims in this case. (Doc. 151-1 at 26.) *See Hensley*, 461 U.S. at 435 ("In [some] cases[,] the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis."). Yet clearly, some work was done on the non-VCPA claims (including, for example, work related to discovering and exposing to the jury the amount of damages incurred as a result of defects in the home), and the fee award granted under the VCPA is not intended to award counsel for work done exclusively on non-VCPA claims. Therefore, the Court reduces the lodestar figure by 10%. *See Marion S. Mishkin Law Office v. Lopalo*, 767 F.3d 144, 150 (2d Cir. 2014) ("district court is not obligated to undertake a line-by-line review of . . . fee application[s]"; instead, court may "exercise its discretion and use a percentage deduction as a practical means of trimming fat" (internal quotation marks omitted)). This accounts for Plaintiffs' failing to succeed on two of their three claims but prevailing on their VCPA claim, reflecting the work of experienced attorneys to vindicate a wrong committed by a corporation against consumers and leaving those

consumers with sufficient funds to repair the wrong and with the hope that similarly situated consumers may not experience the same wrong in the future.

## VI.    Final Fee Award

After reducing Plaintiffs' presumptively reasonable fee (the lodestar) by 10% for their degree of success in the litigation, the final fee award for Plaintiffs' attorneys is **$127,273.50** ($141,415.00 - $14,141.50).

## VII.    Costs

When a court makes an award of attorney fees, it should also award the prevailing party "reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients," so long as these costs are "incidental and necessary to the representation." *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987) (internal quotation marks omitted). Here, Plaintiffs seek reimbursement for $7,567.03 in costs and has produced documentation supporting this request. (Doc. 141 at 10; Doc. 141-4.) Plaintiffs claim that amount reflects expenses paid for "copying, deposition and expert witness costs[, and] travel expenses." (Doc. 141 at 10.) Ritz-Craft argues that the Court should reduce the amount of costs awarded by the amount spent on James Bradley's expert report and deposition, given that Bradley was retained exclusively in defense of Plaintiffs' warranty claims and Plaintiffs did not prevail on those claims. (*See* Doc. 151 at 13–14; Doc. 151-1 at 29–30.) As discussed above, however, the Court finds that Plaintiffs' VCPA and warranty claims were interwoven, making it impossible to separate the costs expended on each particular claim.

Having reviewed the Expense Record submitted by Plaintiffs in support of their Application for Costs and Attorney Fees (Doc. 141-4), the Court finds that Plaintiffs' costs are not excessive. Accordingly, the Court awards Plaintiffs their full costs in the amount of **$7,567.03**.

### Motion for Prejudgment Interest

In their Motion for Prejudgment Interest (Doc. 139), Plaintiffs seek an award of prejudgment interest at the rate of 12% per annum on the $94,262 damage award conferred by the jury at trial. (*Id.* at 2, 4 (citing *EBWS, LLC v. Britly Corp.*, 2007 VT 37, ¶ 36, 181 Vt. 513, 928 A.2d 497; 9 V.S.A. § 41a(a)).) Plaintiffs assert that this amount of consideration was "stipulated to" and thus was "reasonably ascertainable." (Doc. 139 at 3.)

In Vermont, "[p]rejudgment interest is awarded as of right when damages are liquidated or reasonably certain." *EBWS*, 2007 VT 37, ¶ 36. A liquidated claim is "one whose amount is settled or determined, [especially] by agreement." *Salatino v. Chase*, 182 Vt. 267, 274, 939 A.2d 482 (Vt. 2007) (alteration in original) (internal quotation marks omitted); *see also Asian Imports, Inc. v. Pepe*, 633 So.2d 551, 552 (Fla. Dist. Ct. App. 1994) ("Damages are liquidated when the proper amount to be awarded can be determined with exactness from the cause of action as pleaded, i.e., from a pleaded agreement between the parties, by an arithmetical calculation[,] or by application of definite rules of law."). The rationale for an award of prejudgment interest is that "the defendant can avoid the accrual of interest by simply tendering to the plaintiff a sum equal to the amount of damages." *EBWS*, 2007 VT 37, ¶ 36 (quoting *Nat. Res. v. Glens Falls Ins. Co.*, 169 Vt. 426, 435, 736 A.2d 768 (1999)). Moreover, the Vermont

Supreme Court explained: "Liability for prejudgment interest furthers the purpose of giving defendants incentive to pay as quickly as possible." *Vastano v. Killington Valley Real Estate*, No. 751-12-01 Rdcv, 2008 WL 2937171 (Vt. Super. Jan. 10, 2008).

Where the amount of damages is "uncertain or disputed," the trial court may award prejudgment interest "in a discretionary capacity." *EBWS*, 2007 VT 37, ¶ 36 (citing *Estate of Fleming v. Nicholson*, 168 Vt. 495, 501, 724 A.2d 1026 (1998)). The court may use this discretion "only where a reasonable and established method can be used to calculate the prejudgment interest." *J.A. McDonald, Inc. v. Waste Sys. Int'l Moretown Landfill, Inc.*, 247 F. Supp. 2d 542, 548 (D. Vt. 2002). Courts generally exercise this discretion "when the plaintiff was harmed by the delay in reimbursement." *Wells Fargo Bank*, 2010 WL 297830, at *11.

The Court denies Plaintiffs' request for prejudgment interest. Preliminarily, it is at least noteworthy that although the VCPA contains a provision for an award of "reasonable attorney's fees," it does not contain such a provision for prejudgment interest. 9 V.S.A. § 2461(b); *see* 9 V.S.A. § 2451 *et seq*. Nonetheless, the Vermont Supreme Court has upheld—without discussing the issue[9]—two Superior Court decisions that granted prejudgment interest on VCPA awards. *See Vastano*, 2010 VT 12, ¶ 1; *L'Esperance*, 2003 VT 43, ¶¶ 6, 28. These cases do not apply here, however, as the amount of damages was not reasonably ascertainable in this case. *See, e.g.*, *EBWS*, 2007 VT 37, ¶ 37 (upholding decision declining to award prejudgment interest,

---

[9] It appears there was no challenge to the grant of prejudgment interest on the VCPA awards in these cases; thus, the Vermont Supreme Court was not required to address the issue.

finding it "was not mandatory in this case" because "the amount of damages was not reasonably certain").

In both the Complaint (filed in June 2014) and the Amended Complaint (filed in October 2016), Plaintiffs sought judgment against Ritz-Craft under the VCPA claim "in the amount of the consideration paid of $246,673 attributable to [Ritz-Craft] or the damages attributable to [Ritz-Craft], if greater," *plus* "damages suffered by Plaintiffs due to inconvenience, time and expense for coordinating necessary repairs, excessive heating costs, mental anguish, a reasonable sum for the loss of enjoyment for the use of the home and time and expense in prosecuting this action." (Doc. 1 at 10; Doc. 77 at 11–12.) Thus, Plaintiffs' claim for damages against Ritz-Craft under the VCPA was disputed for well over two years after the case was initiated, and Ritz-Craft could not have avoided the accrual of interest simply by tendering to Plaintiffs a sum equal to the amount of damages. It was not until the filing of the Joint Trial Memorandum on March 8, 2017, almost three years after the filing of the original Complaint, that Plaintiffs committed their damages claim for Ritz-Craft's violation of the VCPA to "approximately $97,000." (Doc. 92 at 32.) But even then, Plaintiffs also sought "treble damages" under the statute.[10] (*Id.* at 33.) It was only through trial that the claim for exemplary damages ultimately reached a conclusion.

---

[10] The Pretrial Memorandum states:

Plaintiff is seeking the consideration provided to Ritz-Craft of approximately $97,000 for its violation of the VCPA. Two different figures were provided by Ritz Craft as to the exact amount of consideration paid to Ritz-Craft. Plaintiffs will establish that Ritz-Craft's representations and practices were intentional and in reckless disregard of consumers, and that Plaintiffs should be awarded treble damages.

(Doc. 92 at 32–33.)

## **Conclusion**

For these reasons, Plaintiffs' Application for Costs and Attorney Fees (Doc. 141) is GRANTED in part and DENIED in part, and the Court awards Plaintiffs **$127,273.50** in attorney fees and **$7,567.03** in costs, to total **$134,840.53**. Plaintiffs' Motion for Prejudgment Interest (Doc. 139) is DENIED. The Clerk shall enter judgment on behalf of Plaintiffs as follows:

| | |
|---|---|
| Count I (VCPA claim): | $94,262 |
| Attorney Fees: | $127,273.50 |
| Costs: | $7,547.03 |
| **TOTAL:** | **$229,082.53** |

Dated at Burlington, in the District of Vermont, this 12th day of February 2018.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge